# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Great West Casualty Company,<br><br>        Plaintiff,<br><br>v.<br><br>Ruben Decker,<br><br>        Defendant,<br><br>and<br><br>Ruben Decker,<br><br>        Counterclaim Plaintiff,<br><br>v.<br><br>Great West Casualty Company,<br><br>        Counterclaim Defendant. | Case No. 16-cv-3063 (SRN/HB)<br><br><br><br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Tamara L. Novotny & Michael W. McNee, Cousineau, Van Bergen, McNee & Malone, P.A., 12800 Whitewater Drive, Suite 200, Minnetonka, MN 55343 for Plaintiff and Counterclaim Defendant.

Gregory J. Johnson, G Johnson Law, PLLP, 6688 145th Street West, Apple Valley, MN 55124 for Defendant and Counterclaim Plaintiff.

SUSAN RICHARD NELSON, United States District Judge

On December 21, 2012, an 1,800-pound bale of hay tumbled off Ruben Decker's flatbed trailer and onto Decker's back, thereby injuring Decker. In the six years since this accident, Decker has tried, unsuccessfully, to recover insurance money from the insurer of his

trailer, Great West Casualty Company. Throughout this time, Great West has steadfastly maintained that Decker is not entitled to insurance benefits under the plain language of his policy. The dueling summary judgment motions at issue here, which cover a variety of claims and counterclaims, are the culmination of this dispute.

After carefully reviewing the record and applicable case law, the Court grants Great West's summary judgment motion in full, and dismisses Decker's counterclaim with prejudice.

## I.  BACKGROUND

### A.  The Parties

Plaintiff and Counterclaim Defendant Great West Casualty Company (hereinafter "Great West") is an insurance company with its principal place of business in Nebraska. (*See* Compl. [Doc. No. 1] ¶ 1; An. [Doc. No. 5] ¶ 4.)

Defendant and Counterclaim Plaintiff Ruben Decker (hereinafter "Decker") lives in Tea, South Dakota and was, at the time of the accident giving rise to this litigation, a commercial truck driver for KW Trucking, a Minnesota company. (*See* Compl. ¶ 2; An. ¶ 4.)

Finally, Michael Selle (hereinafter "Selle") lives in Fortuna, North Dakota and, at the time of the accident, ran a small loading center out of his family farm for hay being shipped from Canada to the United States. (*See generally* Def.'s Ex. C [Doc. No. 115-1] ("Selle Deposition").) In short, Selle would unload hay from Canadian trucks, and then re-load said

hay onto American trucks for further distribution. (*See id.* at 58.)[1] Although Selle is not a named party, he figures prominently in this litigation.

## B. The Insurance Policy

In 2012, the KW Trucking fleet (and, by extension, Decker and his vehicle) was insured by a Great West commercial auto coverage policy. (*See* Pl.'s Ex. 1 [Doc. No. 107-1] ("Policy").) Most importantly, the Policy provided no-fault (or "personal injury protection") coverage up to $40,000 and liability coverage up to $1,000,000. (*Id.*)

With respect to no-fault coverage, Great West agreed to pay, "in accordance with the Minnesota No-Fault Act," certain medical and work-loss benefits "incurred with respect to 'bodily injury' sustained by an 'insured' caused by an 'accident' arising out of the maintenance or use of a 'motor vehicle' as a vehicle." (*Id.* Personal Injury Protection § A.) However, in accordance with Minnesota law, Great West specifically excluded coverage for any injuries "aris[ing] out of conduct in the course of loading or unloading any 'motor vehicle' unless the conduct occur[ed] while such person [was] 'occupying' such motor vehicle." (*Id.* § C.7; *accord* Minn. Stat. § 65B.43, subd. 3(2).) "Occupying," in this case, meant "in or upon, entering into, or alighting from." (Policy Personal Injury Protection § F.4.)

With respect to liability coverage, Great West agreed to pay "all sums an 'insured' legally must pay because of 'bodily injury' . . . caused by an 'accident' or resulting from the ownership, maintenance, or use of a covered 'auto.'" (*Id.* Liability Coverage § II.A.) The Policy further stated that Great West had a "right and duty to defend any 'insured' against a

---

[1]      When citing to depositions, the Court uses deposition page numbers, rather than ECF or bates stamp page numbers.

'suit' asking for such damages." (*Id.*) As relevant here, an "insured" included "anyone else while using with your permission a covered 'auto' you own, hire, or borrow *except*," in the context of "moving property to or from a covered 'auto,'" "*anyone other than* your 'employees,' partners, members, a lessee or borrower of a covered 'auto' or any of their employees." (*Id.* § II.A.1.b(4).)

### C. The December 21, 2012 Accident

On December 21, 2012, Decker drove his semi-truck (and attached flatbed trailer) to Selle's farm in Fortuna, North Dakota. (See Def.'s Ex. B at 34 [Doc. No. 115-1] ("Decker Deposition").) Decker intended to pick up a load of hay and then deliver it to Rock Valley, Iowa. (*See* Def.'s Ex. H [Doc. No. 115-4] ("Spot Contract").) When Decker arrived at Selle's farm, he parked and exited his vehicle. (*See* Decker Dep. at 117-18.) Selle then began to load 1,800-pound bales of hay onto Decker's trailer with his tractor, while Decker stood and watched. (*See* Pl.'s Ex. 3 at 78 [Doc. No. 107-1] ("Selle Deposition II"); Decker Dep. at 142.)[2] However, after Selle loaded a stack of hay bales onto Decker's trailer, Decker would secure the load by throwing a strap over the top of the bales. (*See id.* at 65-68.) Because of a device called a "cheater bar," Decker could perform this task without stepping onto the trailer. (*Id.* at 65-66.)

---

[2]     Because the parties included different sections of Selle and Decker's depositions with their summary judgment motions, the Court will occasionally refer to a deposition as "II" to indicate that a cited section may be found in Plaintiff's, rather than Defendant's, exhibits.

The day took a tragic turn, when, for unclear reasons, at least two hay bales fell off Decker's trailer (from a height of eight to ten feet) and onto Decker, while Decker was preparing to secure a load. (*See id*. at 72, 143.) According to Decker, at the time of the accident, he was "bending underneath the trailer," and "reaching [down] to hook the strap to the trailer." (*Id*. at 68; *cf.* Pl.'s Ex. 4 ("Dec. 27, 2012 Internal Great West Notes") (stating that, in Decker's initial conversation with the Great West adjuster, he told the adjuster that, at the time of the accident, he was "ready to throw another strap" over the hay bales, and "had his back to the trailer").) However, by Decker's own admission, his hand's contact with the underside of the trailer constituted his "only physical contact" with his vehicle during the entire loading process. (*Id*. at 117; *accord* Selle Dep. II at 89 (affirming that Decker was "out of his truck" "the entire time" Selle was loading Decker's trailer).) Decker suffered serious injuries to his ribs and femur as a result of this accident, and had to be airlifted to a hospital in Minot, North Dakota, where he was held for three days. (*See* Pl.'s Ex. 4 [Doc. No. 107-1] ("Dec. 27, 2012 Claim Notes"); *see also* Pl.'s Ex. 28 at 4 [Doc. No. 107-3] ("Def.'s Answers to Interrogatories") (asserting that Decker has incurred at least $65,000 in medical expenses).)

Importantly, however, neither Selle's tractor nor premises were insured in December 2012. (*See* Selle Dep. II at 108, 162.) In fact, about one month before the accident, Selle had cancelled the "general liability insurance and insurance that covered [his] equipment." (*Id*. at 162.)

### D. The Subsequent Dispute Over Insurance Coverage

Shortly thereafter, Decker contacted Great West about possible no-fault insurance coverage. However, on January 2, 2013, Great West advised Decker by letter that it would

not provide no-fault benefits because Decker's "injuries did not arise out of an accident that occurred while he was occupying his motor vehicle," *i.e.*, Decker was "standing on the ground" when the hay bales hit him. (Pl.'s Ex. 5 [Doc. No. 107-1] ("Jan. 2, 2013 Denial Letter"); *see also supra* at 3 (describing the "loading and unloading" exception to no-fault coverage).) Several months later, on September 20, 2013, Decker's counsel, Brent Schafer, advised Great West that, denial letter notwithstanding, Decker would be pursuing the $1 million liability policy limit (presumably on the theory that KW Trucking, a named insured on the Policy, was negligent), along with "other coverage." (Pl.'s Ex. 8 [Doc. No. 107-2] ("Sept. 20, 2013 Schafer Letter").)

A few months later, Schafer advised Great West that Decker would not pursue a negligence claim against KW Trucking under the Policy's liability provision because "further investigation" revealed "no identifiable acts of negligence on behalf of KW Trucking." (*See* Pl.'s Ex. 10 [Doc. No. 107-2] ("Nov. 27, 2013 Schafer Letter").) Instead, Decker, through Schafer, re-asserted his no-fault claim, on grounds that Decker was, in fact, "occupying" his trailer at the time of the accident (because he was "in contact with the vehicle when the hay bale fell"). (*See* Pl.'s Ex. 11 [Doc. No. 107-2] ("Feb. 27, 2014 Schafer Letter").) Decker also informed Great West that he would bring suit if Great West did not promptly pay this claim. (*Id.*) However, on March 25, 2014, Great West again denied Decker's claim. (*See* Pl.'s Ex. 14 [Doc. No. 107-2] ("Mar. 25, 2014 Denial Letter").)[3]

---

[3]     During these initial communications both parties proceeded on the assumption that North Dakota no-fault law (and its accordant $30,000 policy limit) governed Decker's claim, rather than Minnesota no-fault law (and its accordant $40,000 policy limit). (*See, e.g.*, Pl.'s Ex. 7 [Doc. No. 107-2] ("Sept. 16, 2013 Great West Letter") (stating that the

### E.  The North Dakota Litigation and Further Developments

Almost a year later, on February 27, 2015, Decker added Great West as a defendant to his ongoing lawsuit against Selle in North Dakota state court. (*See* Pl.'s Ex. 16 [Doc. No. 107-2] ("Decker First Am. North Dakota Compl.").)[4] For unclear reasons, in this complaint Decker only sought uninsured motorist benefits from Great West. (*Id*. Prayer for Relief.) Great West moved for summary judgment, but, before this motion could be decided, Decker agreed to dismiss Great West from the North Dakota suit with prejudice. (*See* Pl.'s Exs. 19-20 [Doc. No. 107-2].) Accordingly, on March 1, 2016, Judge Sjue of the North Dakota district court dismissed Great West from the suit with prejudice. (*Id*.)

This did not end the matter. Sometime in 2016, Decker appeared to obtain another counsel, Gregory Johnson. Johnson contacted Great West in August and September of 2016 and, not only demanded (once again) that Great West pay Decker $40,000 in no-fault benefits, but also suggested that Great West had a duty to defend and indemnify *Selle* from Decker's

---

Policy only provided $30,000 in no-fault benefits, in accordance with North Dakota law).) It is not clear why that was the case, as Great West corporate policy (not to mention well-established Minnesota insurance law) required the more generous Minnesota policy limits to govern a Minnesota insurance policy like this one. *See* Minn. Stat. §§ 65B.44, subd. 1, 65B.46, subd. 2; *accord* Def.'s Ex. D at 64 [Doc. No. 115-2] ("Mark Galvin Deposition") (affirming that Great West understands this principle).

This mix-up arguably does not matter because both states require insureds to be "occupying" a vehicle in order to recover no-fault benefits arising out of a loading/unloading accident, and Decker was arguably not "occupying" his trailer at the time of the accident here. *Compare* Minn. Stat. § 65B.43, subd. 3(2) *with* NDCC § 26.1-41-01(13). However, the Court makes note of this miscommunication because Decker's Minnesota Consumer Fraud Act counterclaim rests almost entirely on it.

[4]     Decker had sued Selle under various negligence causes of action in November 2013. (*See* Pl.'s Ex. 32 [Doc. No. 118-1] ("Decker Original North Dakota Compl.").)

North Dakota negligence claim, on grounds that, as a "permissive user" of Decker's vehicle at the time of the accident, Selle was an "insured" under the Policy. (*See generally* Def.'s Exs. P-Q [Doc. No. 115-4] (correspondence between Johnson and Great West's counsel); *see also supra* at 3 (defining "insured" under the liability portion of the Policy).) Perhaps not coincidentally, shortly after this correspondence Selle's counsel in the North Dakota litigation contacted Great West and requested that Great West "defend the Selles and indemnify them." (*See* Pl.'s Ex. 21 [Doc. No. 107-2] ("Sept. 9, 2016 Selle Letter").) Great West denied this request, citing the "moving property exclusion" to liability coverage delineated above. (*See* Pl.'s Ex. 22 [Doc. No. 107-2] ("Oct. 17, 2016 Selle Denial Letter").)[5]

### F.  Procedural History

Faced with this disagreement, on September 14, 2016 Great West filed the instant declaratory judgment action to determine its rights, obligations, and liability under the Policy. Decker filed an answer and counterclaim (which he later supplemented), in which he asserted Minnesota Consumer Fraud Act, breach of contract, and breach of the implied covenant of good faith and fair dealing counterclaims, along with his own request for declaratory relief. (*See* An. & Counterclaim at 35; Supp. Counterclaim at 32.) Following a lengthy discovery period, in which the parties briefed and argued numerous discovery motions before Magistrate Judge Bowbeer, the parties cross-moved for summary judgment in August 2018.

---

[5]     Selle subsequently entered into a *Miller-Shugart* settlement with Decker, in which Selle agreed to accept a judgment against himself and then assign any liability claims he had against Great West to Decker. (*See* Supp. Counterclaim [Doc. No. 48] ¶¶ 130e-h.) The North Dakota state court accordingly entered judgment against Selle on August 28, 2017. (*Id.* ¶ 130h.)

The parties simultaneously filed motions and opposition motions, and the Court heard oral argument on September 28, 2018. (*See* Pl.'s Mem. in Support of Summ. J. [Doc. No. 106] ("Pl.'s Br.")); Def.'s Mem. in Support of Summ. J. [Doc. No. 113] ("Def.'s Br."); Pl.'s Mem. in Opp. to Def.'s Summ. J. Mot. [Doc. No. 117] ("Pl.'s Opp. Br."); Def.'s Mem. in Opp. to Pl.'s Summ. J. Mot. [Doc. No. 119] ("Def.'s Opp. Br.").)

## II.    DISCUSSION

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). In considering a summary judgment motion, the Court must "view[] the evidence in the light most favorable to the nonmoving party." *Grinell Mut. Reinsurance Co. v. Schwieger*, 685 F.3d 697 (8th Cir. 2012). However, a party opposing summary judgment "'must set forth specific facts showing that there is a genuine issue for trial,' and 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Ingrassia v. Schafer*, 825 F.3d 891, 896 (8th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57).

Moreover, because this case comes to the Court by way of diversity jurisdiction, and because the insurance contract at issue is a Minnesota contract, the Court must apply Minnesota substantive law. *See Netherlands Ins. Co. v. Main Street Ingredients, LLC*, 745 F.3d 909, 913 (8th Cir. 2014). In applying Minnesota law, the Court must "predict how the Supreme Court of Minnesota would rule [on the facts of this case], and . . . follow decisions of the intermediate state court when they are the best evidence of Minnesota law." *Sletten & Brettin Orthodontics, LLC v. Continental Cas. Co.*, 782 F.3d 931, 934 (8th Cir. 2015); *see*

*also Grinnell*, 685 F.3d at 703 n.5 (noting that even "unpublished" Minnesota state court of appeals decisions "can be of persuasive value" to a federal court sitting in diversity jurisdiction).

Although the parties submitted around 200 pages of briefing, and divide this dispute into various issues and sub-issues, the Court finds that, at bottom, three overarching disputes underlie this case: (1) whether Decker is entitled to no-fault benefits under the Policy and Minnesota law, (2) whether Great West is entitled to summary judgment on Decker's stand-alone Minnesota Consumer Fraud Act counterclaim,[6] and (3) whether Minnesota law compels Great West to defend and indemnify Selle as an "insured" under the Policy, on grounds that the "moving property exclusion" to liability coverage described above is void and unenforceable against Minnesota public policy. The Court will address each dispute in turn.[7]

## A. Whether Decker Is Entitled to No-Fault Benefits

### 1. The Law

---

[6]     Although Decker asserts other, contract-based counterclaims, those claims are inextricably wound up with the Court's decisions on the first and third questions, and will be addressed therein.

[7]     Decker also appeared to argue at one point that he was entitled to $5,000 in medical expense benefits under the Policy's commercial general liability provision. (*See* Pl.'s Br. at 25 (citing Count IV of Decker's Counterclaim).) However, in his opposition brief, Decker conceded that he was not eligible for such benefits because the CGL provision does not cover injuries arising out of the "use" of a covered auto, including loading/unloading situations. (*See* Def.'s Opp. Br. at 2 n.2.) As such, summary judgment will be granted to Great West on Count IV of Decker's Counterclaim.

Minnesota law requires auto insurers to provide their insureds with $40,000 in no-fault benefits for "all loss[es] suffered through injury arising out of the maintenance or use of a motor vehicle." Minn. Stat. § 65B.44, subd. 1(a). However, the law allows insurers to deny coverage for injuries arising out of "conduct in the course of loading and unloading the vehicle *unless* the conduct occurs while [the insured was] occupying, entering into or alighting from [the vehicle]." *Id*. § 65B.43, subd. 3(2) (emphasis added). As noted above, the Policy traces this language almost precisely. *See supra* at 3. The only difference is that, while Minnesota law does not specifically define the term "occupy," the Policy includes the following definition: "in or upon, entering into, or alighting from." (Policy Personal Injury Protection § F.4.)

In *Allied Mut. Ins. Co. v. Western Nat. Mut. Ins. Co.*, the Minnesota Supreme Court approved an almost identical definition of "occupy" (*i.e.*, "in, upon, getting in, on, out or off"), and held that courts are to construe the term according to the "plain and straightforward" language in the policy's definition. 552 N.W.2d 561, 563 (Minn. 1996); *accord General Cas. Co. of Wis. v. Wozniak Travel, Inc.*, 762 N.W.2d 572, 575 (Minn. 2009) ("[U]nambiguous words" in insurance contracts "will be given their plain, ordinary, and popular meaning."). In so holding, the Minnesota Supreme Court rejected prior, court-made definitions of "occupy," which suggested that one could "occupy" a vehicle simply by being within a "reasonable geographic perimeter around the vehicle," or by exhibiting "a continuing relationship between [the] vehicle" and one's self. *Id*. (citing *Horace Mann Ins. Co. v. Neuville*, 465 N.W.2d 432, 433 (Minn. Ct. App. 1991); *Klein v. U.S. Fidelity & Guaranty Co.*, 451 N.W.2d 901, 903-04 (Minn. Ct. App. 1990)). Such definitions, the Minnesota Supreme Court ruled, elided the

"ordinary and commonly accepted meaning of 'occupy,'" and "invit[ed] creative definitions . . . molded to fit whatever conclusion is convenient." *Id.* For instance, in *Allied*, a claimant was hit by a passerby's vehicle while she was waiting to enter her friend's vehicle. *Id.* at 562. The Court found that the claimant did not "occupy" her friend's vehicle (which she expected to enter once her friend unlocked it) merely by "standing in the vicinity" of the vehicle. *Id.*

A few years later, in *Short v. Midwest Family Mut. Ins. Co.*, the Minnesota Court of Appeals further ruled that, when an insurance policy uses words like "on" or "upon" in defining "occupy," those words are to be given their "literal" meaning. 602 N.W.2d 914 (Minn. Ct. App. 1999). More specifically, the Court of Appeals held that a tow truck driver was not "on" or "upon" his truck when he was hit by a car seconds after exiting his driver-side door and "walking toward the lift controls at the rear" of the truck. *Id.* at 915. Although the driver argued that he was "on" the tow truck in the same sense a "house *on* the lake" is "in proximity to" the lake, the Court rejected this argument, and found that it had "no reason whatsoever to believe that the insurance policy language was intended to be anything other than literal." *Id.* at 916.

As such, since *Allied* and *Short*, Minnesota courts have only found that a claimant "occupies" a vehicle if they are literally "in" or "on" the vehicle, or in the process of entering or exiting the vehicle, at the time of the accident. *See, e.g.*, *Ill. Farmer's Ins. Co. v. Marvin*, 707 N.W.2d 747, 751 (Minn. Ct. App. 2006) (holding that a claimant was "occupying" her

SUV while unloading it because "the upper half of her body had been in the [open trunk of her] vehicle mere moments before" a car crashed into her from behind).[8]

The one District of Minnesota decision to address the meaning of "to occupy" in recent years reached a similar conclusion. In *Fjelstad v. State Farm Ins. Co.*, Judge Kyle conducted an extensive review of the case law described above and determined that a claimant who was hit by a passerby while standing outside her friend's car in a grocery store parking lot, waiting to enter as her friend placed their purchases in the trunk, was neither "occupying" nor "entering into" her friend's car. 845 F. Supp. 2d 981, 988 (D. Minn. 2012). It did not matter that the claimant intended to enter the car in a matter of minutes (if not seconds), or that the claimant was physically "present while [her] purchases were being loaded into" her friend's car. *Id*. Rather, because the claimant "was not inside [the car] when the accident occurred," she was not "occupying" the vehicle. *Id*. To rule otherwise, Judge Kyle noted, "would stretch the term 'occupying' beyond its commonly understood meaning." *Id*. (citing *Allied*, 552 N.W.2d at 563-64).

## 2. Analysis

Here, Decker's injury plainly "a[rose] out of conduct in the course of loading" goods into a covered motor vehicle. (Policy Personal Injury Protection § C.7.) Thus, the salient

---

[8] There is some pre-*Allied* Court of Appeals case law in support of this "plain language" understanding of "to occupy" as well. *See, e.g.*, *Himle v. Am. Family Mut. Ins. Co.*, 445 N.W.2d 587, 591 (Minn. Ct. App. 1989) (holding that claimant injured while trying to drag a horse into a trailer was not "occupying" the trailer because, when the horse injured him, the claimant was standing a few steps outside the trailer); *Huynh v. Ill. Farmer's Ins. Co.*, 421 N.W.2d 390, 392 (Minn. Ct. App. 1988) (stating, in passing, that claimant was not "occupying" his vehicle while leaning against it because he was not "physically sitting in the vehicle").

question is whether, at the time the hay bales struck Decker, Decker was "occupying" a covered vehicle, as the term is defined in his Policy. (*Id.* § F.4 (defining "occupying" as "in or upon, entering into, or alighting from").)[9]

Viewing the evidence in the light most favorable to Decker, the record shows that, at the time of the accident, Decker was bent over beside the trailer, with, at most, one hand on the underside of the trailer. *See supra* at 4-5. Further, Decker's deposition testimony confirms that, during his entire time at the Selle farm, Decker neither stood atop his trailer, nor engaged in substantial physical contact with the trailer bed. (*See, e.g.*, Decker Dep. at 117-18 ("Q: Other than your hand touching the trailer to try and tie the strap down, was that the only physical contact between you and the trailer? A: Yeah, I just – yes." "Q: And once you parked the semi [truck] and trailer, did you ever get on the trailer itself? A: Not that I recall.").)

On these undisputed facts, the Court finds that Decker was not "occupying" his trailer at the time of the accident. First, because Decker's physical contact with his trailer at the time

---

[9]     Decker cursorily attempts to argue that Great West is "estopped" from relying on this loading/unloading exclusion because it did not explicitly cite the exclusion in its initial denial letters, allegedly in violation of the No-Fault Act. *See* Minn. Stat. § 65B.54, subd. 5 (requiring insurers "who reject a claim for benefits" to "give to the claimant prompt written notice of the rejection, specifying the reason"). The Court disagrees. For one, even if Great West's denial letters did not cite this precise exclusion, Great West complied with the statute's purpose by informing Decker (repeatedly) that it was denying him coverage because he did not "occupy" his vehicle at the time of the accident. Decker's counsel had ample opportunity to respond to this assertion.

      Moreover, even if Great West's initial denial letters did violate the No-Fault Act's notice provision, Decker concedes that no Minnesota court has ever ruled that estoppel is the proper remedy for such a violation. (*See* Def.'s Br. at 51.) The Court declines to create a *sui generis* remedy here. *Accord Nelson v. Am. Home Assur. Co.*, 824 F. Supp. 2d 909, 913 n.2 (D. Minn. 2011) ("[T]he Eighth Circuit and Minnesota courts have consistently held that estoppel cannot be used to expand or create insurance coverage where it otherwise would not exist.") (citations omitted).

of the accident was *de minimis* and fleeting, Decker was not injured while "upon" his trailer. *See* Merriam-Webster's Collegiate Dictionary (10th ed. 1999) (defining "upon" as "on," and in turn defining "on" as, first and foremost, "a function word to indicate position in contact with and supported by the top surface of," *e.g.*, "the book is lying on the table"). Moreover, Decker was plainly not injured while "in," "entering into," or "alighting from" his truck or trailer. *Compare with Galle v. Excalibur Ins. Co.*, 317 N.W.2d 368, 369 (Minn. 1982) (claimant truck driver "occupied" his trailer because, when he injured his back, he was "standing inside [the] stationary trailer, unloading cargo onto the loading dock"). As such, under the "plain and straightforward" language of the Policy, Decker is not entitled to no-fault benefits. *Allied*, 552 N.W.2d at 563.

Decker's arguments to the contrary are unavailing. Decker first points to numerous non-Minnesota cases adopting the broader understanding of "to occupy" mentioned above. (*See* Def.'s Br. at 53-55 (*citing, e.g.*, *South Carolina Farm Bureau Mut. Ins. Co. v. Kennedy*, 398 S.C. 604, 609 (2012)).) Although Decker is correct that a majority of state courts have adopted a broader, non-literal definition of "to occupy," that is of no moment because the Minnesota Supreme Court is not one of those courts. *See U.S. Fidelity and Guar. Co. v. Goudeau*, 272 S.W.3d 603, 607 (Tex. 2008) (detailing the various definitions of "to occupy" used by state courts across the country, deeming Minnesota a "plain-and-ordinary-meaning" state, and adopting that standard, too).

Perhaps because of this, in Decker's opposition brief he reverses course and cites a handful of Minnesota cases in which the Court of Appeals found that a claimant was "entering" their car because their body was in their trunk, or in the process of entering their

trunk, at the moment of injury. *See, e.g.*, *Marvin*, *supra*; *Jorgensen by Jorgensen v. Auto-Owners Ins. Co.*, 360 N.W.2d 397, 400 (Minn. Ct. App. 1985) (holding that claimant injured by gas explosion in car trunk was "occupying" his father's vehicle because he "was entering the trunk of the car to remove the jumper cables" at the time of injury). Decker contends he was similarly injured while "entering into" the "underside" of his trailer, *i.e.*, he was "penetrating the trailer's outer boundaries" when the hay bales struck him. (*See* Def.'s Opp. Br. at 28.) However, the facts of the cited cases are readily distinguishable, in that the claimant was literally "in" or "entering" their vehicle at the moment of injury. Suffice it to say, "penetrating" the "outer boundaries" of a flatbed trailer with one's hand is not the same as "entering into" a vehicle, as that term is commonly understood. (Policy Personal Injury Protection § F.4.)

Finally, Decker argues that, were the Court to find that Decker was not "occupying" his vehicle, it would prevent passing "pedestrian[s], bystander[s], bicyclist[s], or motorist[s]" injured by falling cargo during a loading/unloading situation from recovering no-fault benefits, a purportedly absurd result. (Def.'s Opp. Br. at 27.) But, far from being an absurd result, limiting the no-fault liability of *automobile* insurers during loading/unloading situations to only those persons who literally "occupy" the insured vehicle is the point of the No-Fault Act's exclusion. During these situations, in which a vehicle is parked and utilized for arguably non-transportation purposes, the risk of injury (sensibly) shifts from the car insurer to either the person observing the loading, outside the confines of the vehicle, or to other forms of liability insurance. *See Himle*, 445 N.W.2d at 591 (noting that "the loading and unloading clause of the Minnesota No-Fault Act is

16

'consistent with the philosophy of [the] Act, to compensate losses resulting directly from motoring accidents and to leave to other forms of insurance and compensation systems those losses which are tangential to motorists'") (quoting *Krupenny v. West Bend Ins. Co.*, 310 N.W.2d 133, 135 (Minn. 1981)). Although it is unfortunate that other forms of insurance do not appear to exist in this case, *see supra* at 5, that does not mean Great West must provide Decker no-fault benefits that neither his Policy nor Minnesota law entitle him to.

For these reasons, Great West's summary judgment motion as to no-fault benefits is granted. [10]

Further, because Decker's no-fault breach of contract counterclaim (Counterclaim Count III) and breach of the implied covenant of good faith and fair dealing counterclaim (Counterclaim Count II) hinge on whether Great West wrongfully denied Decker no-fault benefits, and because the Court has found that Great West did not wrongfully deny Decker such benefits, Great West's summary judgment motion as to Counts II and III of Decker's Counterclaim is granted as well. *See Food Mkt. Merch., Inc. v. Scottsdale Indem. Co.*, 196 F. Supp. 3d 1004, 1010 (D. Minn. 2016) (granting summary judgment against implied covenant of good faith and fair dealing claim "where the claim [was] based on the same facts as a non-viable breach-of-contract claim") (citing *Bethel v. Darwin Select Ins. Co.*,

---

[10]    Because the Court concludes that Decker was not "occupying" his vehicle at the time of the accident, the Court need not consider Great West's alternative argument that Decker's injury did not "arise from the maintenance or use of a motor vehicle as a vehicle." (*See, e.g.*, Pl.'s Br. at 13-16 (citing *Cont'l W. Ins. Co. v. Klug*, 415 N.W.2d 876 (Minn. 1987)).)

735 F.3d 1035, 1042 (8th Cir. 2013)); *Midwest Sports Mkt., Inc. v. Hillerich & Bradsby of Canada, Ltd.*, 552 N.W.2d 254, 268 (Minn. Ct. App. 1996) (same).[11]

### B. Whether Great West Is Entitled to Summary Judgment on Decker's Minnesota Consumer Fraud Act Counterclaim

#### 1. The Law

The Minnesota Consumer Fraud Act ("CFA") prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise." Minn. Stat. § 325F.69, subd. 1; *see also Parkhill v. Minn. Mut. Life Ins. Co.*, 995 F. Supp. 983, 997-98 (D. Minn. 1998) (holding that insurance is "merchandise" under the CFA). Minnesota's Private Attorney General Statute, in turn, provides that "any person injured by a violation of," *inter alia*, the CFA, "may bring a civil action and recover damages," along with the costs of investigation, attorney's fees, and "other equitable relief." Minn. Stat. § 8.31, subd. 3(a).

Given these potentially "sweeping remedies," the Minnesota Supreme Court has determined that a private party can only bring a CFA claim if they "demonstrate that their cause of action benefits the public." *Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000). In *Ly*, for instance, the Minnesota Supreme Court found that being "defrauded in a single one-on-one transaction in which [a] fraudulent misrepresentation . . . was made only to the [consumer]," did not involve a "public benefit." *Id.*; *accord Davis v. U.S. Bancorp*, 383 F.3d

---

[11]     To the extent Decker connects any independent "misrepresentations" by Great West to his breach of the implied covenant of good faith and fair dealing counterclaim (*see, e.g.*, Def.'s Opp. Br. at 33), the Court addresses that evidence in Section II.B, *infra*.

761, 768 (8th Cir. 2004) ("The class of plaintiffs under the private attorney general statute would be limitless if we assumed that one individual's negative experience with a company was necessarily duplicated for every other individual and on that basis treated personal claims as benefitting the public.").

As such, to proceed to trial on a CFA claim, a private plaintiff must point to evidence from which a reasonable juror could determine that "the defendant engaged in conduct prohibited by the statute[,] that the plaintiff was damaged thereby," *Grp. Health Plan, Inc. v. Philip Morris, Inc.*, 621 N.W.2d 2, 12 (Minn. 2001), and that the alleged misconduct affected "the public," *Ly*, 615 N.W.2d at 314.

### 2. Analysis

As best the Court can tell, Decker's CFA claim is as follows: (1) Great West sells commercial trucking insurance policies in Minnesota, (2) in these policies, Great West assures policyholders that it will provide the minimum no-fault coverage required by Minnesota law, including for out-of-state accidents, (3) however, contrary to these assurances, and in violation of Minnesota law, Great West systematically underpays (or denies coverage to) insureds injured in out-of-state accidents, (4) Great West does so by relying on the (purportedly less generous) no-fault coverage liability limits in those states, rather than on the (purportedly more generous) Minnesota no-fault liability limits, and (5) Great West then intentionally fails to disclose this scheme to commercial truck drivers purchasing Great West insurance policies (like Decker), in hopes that it will induce them to buy "functionally worthless and illusory no-fault coverage." (Supp. Countercl. ¶ 95.) This scheme is purportedly

ongoing. (*See* Def.'s Opp. Br. at 41; *see also* Supp. Countercl. ¶ 96 (requesting an injunction that would stop Great West from continuing this scheme).)

As evidence, Decker primarily relies on his own interactions with Great West, in which Great West repeatedly (and, by its own admission, incorrectly) cited North Dakota law and its $30,000 coverage limit in denying his no-fault claim, rather than Minnesota law and its $40,000 coverage limit. *See supra* note 3; *see also* Sept. 28, 2018 Hr'g Tr. at 22 (conceding that Great West "probably" should have relied on Minnesota no-fault law in denying Decker's claim). Decker also points to two other instances in which Great West referenced out-of-state law to Minnesota policyholders when denying no-fault claims for out-of-state accidents, and suggests that yet-to-be-disclosed evidence might show that Great West is underpaying those to whom it does pay benefits. (*See* Def.'s Opp. Br. at 39-40, and n.40.)

In response, Great West notes that its internal records (which it produced in discovery) plainly show that Great West is not running a scheme to underpay or deny coverage for out-of-state accidents. In fact, of the 100 out-of-state, no-fault claims Great West received from Minnesota policyholders in 2011 and 2012, Great West paid benefits on 37 of those claims. (*See* Pl.'s Br. at 18-19 (citing Pl.'s Exs. 25-27 [Doc. No. 107-2 – 107-3] ("Great West 2011-12 Claim Data").) What is more, 29 of those claims were paid to policyholders injured in states that do not even require no-fault coverage, thus belying any suggestion that Great West fraudulently eliminates Minnesota no-fault coverage based on the law of the state where the accident occurred. (*Id.*) Additionally, of the 63 instances in which Great West denied an out-of-state, no-fault claim, Great West's denial letters only referenced foreign law in three instances (one of which was Decker's case). (*Id.* at 20.) However, Great West points out, there

is no evidence that the claimants in any of those three cases (including Decker) were wrongfully denied no-fault coverage to which they were entitled under Minnesota law, much less wrongfully denied coverage as part of a scheme to defraud policyholders injured in foreign states. (*Id.* at 20-21.)

Furthermore, Great West's corporate deponent testified under oath that Great West's policy is to provide Minnesota no-fault coverage at a minimum, and then increase this coverage if a state offers more generous no-fault coverage, *e.g.*, because Michigan offers more generous no-fault coverage than Minnesota, a claims adjuster reviewing a Minnesota policyholder's Michigan accident would consider Michigan law alongside Minnesota law. (*See* Galvin Dep. at 64-65, 69-71, 81.)[12] To the extent the company suggested its policy was otherwise in its dealings with Decker, another Great West employee noted at his deposition, that was an accident. (*See* Def.'s Ex. E [Doc. No. 115-3] at 53-54 ("Patrick O'Halloran Deposition") (stating that the company's normal "procedure" for out-of-state accidents is to discuss the insurance coverage available in both states with the insured).) In his opposition brief, Decker does not attempt to contradict or impeach this testimony.

In light of this uncontested testimony, the Court finds that Great West is entitled to summary judgment on Decker's CFA counterclaim for two, independent reasons. First, in light of the Court's summary judgment ruling that Decker is not entitled to no-fault benefits under Minnesota law, no reasonable juror could find that Decker suffered an "injury" by dint of Great West's supposedly "fraudulent" misrepresentations. *See D.A.B. v. Brown*, 570

---

[12]    Indeed, one of the "improper" invocations of foreign law cited by Decker involved a Michigan accident. (*See* Pl.'s Br. at 20.)

N.W.2d 168, 173 (Minn. Ct. App. 1997) (noting that "injury" "is an essential element of a cause of action under the [CFA]," and dismissing complaint that did not allege specific facts showing that a misrepresentation injured the plaintiffs); *accord Buetow v. A.L.S. Enter., Inc.*, 650 F.3d 1178, 1184-85 (8th Cir. 2011) (holding that, under the CFA, a private plaintiff is "requir[ed] . . . to prove harm or injury-in-fact"); *Nelson v. Am. Family Mut. Ins. Co.*, 262 F. Supp. 3d 835, 862 (D. Minn. 2017) (holding that failure to show damages "alone requires dismissal of [a Minnesota] statutory fraud claim").

As the Court noted above, North Dakota and Minnesota's No-Fault Acts contain an identical "loading-and-unloading" clause. *See supra* note 3. And, under either law, Decker was not "occupying" his vehicle at the time of the accident. *Compare supra* Section II.A *with* NDCC § 26.1-41-01(12) (defining "occupying" as "to be in or upon a vehicle"). As such, although Great West incorrectly informed Decker that he was only entitled to $30,000 in no-fault benefits under the Policy (by referencing North Dakota law), this error did not financially harm Decker because he was not entitled to the $40,000 in no-fault benefits available to him under Minnesota law. (*Accord* O'Halloran Dep. at 50, 85-88 (explaining that the claims adjuster's invocation of North Dakota law was harmless because, in Great West's view, Decker was not "occupying" his vehicle under either state's No-Fault Act).) In other words, the premiums Decker paid Great West were not for "functionally worthless and illusory no-fault coverage." (Supp. Countercl. ¶ 95.) What is more, there is no indication that, had Great West denied Decker's no-fault claim explicitly under Minnesota law back in 2013, Decker would have (or could have) done anything different in response. *Cf. D.A.B.*, 570 N.W. 2d at

173 (noting that one can show damages under the CFA by demonstrating that one would have taken another course of action, absent the alleged fraud).

Decker's only argument to the contrary is that "a private litigant incurs an 'injury' when forced to defend against fraudulent conduct that violates the CFA." (Def.'s Opp. Br. at 35-36 (citing *Love v. Amsler*, 441 N.W.2d 555, 558 (Minn. Ct. App. 1989)). In making this argument, Decker notes that Great West sued him for declaratory relief in federal court (allegedly as part of its "fraudulent scheme"), and thus injured him by forcing him to incur attorney's fees. However, the case Decker cites for this proposition, *Love v. Amsler*, is inapposite. There, the Court of Appeals found that a tenant in housing court could recover attorney fees under a CFA counterclaim because her landlord's deceptive actions, such as charging her and her fellow tenants for un-incurred water bills and non-existent attorney fees, injured her. *See Love*, 441 N.W.2d at 560. Although the landlord argued on appeal that the tenant had not suffered any actual damages from these practices (in the form of a damages award), the Court of Appeals disagreed, and noted that "the effect of [the landlord's] practices and having to defend against them satisfie[d] the requirement of 'injury'" under the CFA (as applied through the Minnesota Private AG Act). *Id.*

As the Court of Appeals recently clarified, though, *Love* does not "stand for the principle that a plaintiff's incurrence of attorney's fees and litigation costs, alone, satisfies the injury requirement under the CFA." *Engstrom v. Whitebirch, Inc.*, 2018 WL 4290056, at *4 (Minn. Ct. App. Sept. 10, 2018). Rather, a CFA plaintiff must demonstrate a substantive injury arising from the fraudulent conduct itself. *Id.* Decker did not do so here.

Second, even if Decker did suffer some intangible injury simply by being wrongfully informed that North Dakota law governed his no-fault claim, no reasonable juror could find on this record that Decker's experience is emblematic of a larger fraudulent scheme to harm the public. The Court takes Decker's point that, as a conceptual matter, a large insurance company could defraud the public by promising to provide policyholders the maximum no-fault coverage available under the law of the policy state, and then deny such coverage for out-of-state accidents. Indeed, if the insurance company included misrepresentations in its generally-applicable policy documents, allegations concerning such a scheme may suffice to show a public benefit at the pleading stage. *Cf. Johnson v. Bobcat Company*, 175 F. Supp. 3d 1130, 1142-43 (D. Minn. 2016) (denying motion to dismiss a CFA claim on grounds that there was no "public benefit" to the claim because alleged misrepresentations were included in "promotional materials" sent to "consumers throughout the United States," and had not "been corrected or updated").

However, this case is at the summary judgment stage, where Decker must contest Great West's claims data and deposition testimony with "specific facts" and "affirmative evidence." *Ingrassia*, 825 F.3d at 896. He has not done so. Despite being given the opportunity for discovery, Decker has not shown that his CFA claim is anything other than the proverbial "one-on-one" bad experience that the Minnesota Supreme Court has deemed insufficiently "public" as a matter of law. *Compare Ly*, *supra*, *with Collins v. Minn. School of Business*, 655 N.W.2d 320, 329-30 (Minn. 2003) (finding a "public benefit" to a plaintiff's CFA claim where evidence showed that business school "made misrepresentations to the

public at large by airing a television advertisement" and repeated the misrepresentation at "numerous sales and information presentations").

Although Decker points to two other instances where Great West cited foreign law to Minnesota policyholders, as well as other situations in which Great West might, hypothetically, have underpaid claimants involved in out-of-state accidents (*see* Def.'s Opp. Br. at 39-41), there is no record evidence that Great West improperly denied or truncated insurance coverage in these individual instances, much less on a widespread basis. Indeed, one of Great West's corporate deponents explicitly stated that Decker's experience with the company did not reflect company policy. (*See* O'Halloran Dep. at 53-54.) Decker has not introduced any evidence or testimony suggesting otherwise. Therefore, even assuming Decker was injured by Great West's conduct here, a CFA claim does not lie.

For these reasons, Great West's summary judgment motion as to Count I of Decker's Counterclaim is granted.

### C. Whether Great West is Required to Defend and Indemnify Selle

#### 1. The Law

As a general matter, "parties to insurance contracts, as in other contracts, absent legal prohibition or restriction, are free to contract as they see fit, and the extent of liability of an insurer is governed by the contract they enter into." *Latterell v. Progressive N. Ins. Co.*, 801 N.W.2d 917, 921 (Minn. 2011) (quoting *Bobich v. Oja*, 104 N.W.2d 19, 24 (Minn. 1960)). This principle applies as much to "insurance policy exclusions" as it does to "other provisions in [a] policy." *Id.* (citing *Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn. 1998)). However, insurance policy exclusions that "conflict with statutory law will

not be enforced." *Hertz Corp. v. State Farm Mut. Ins. Co.*, 572 N.W.2d 686, 689 (Minn. 1998). In deciding whether an insurance policy conflicts with a statute, courts must follow the "plain meaning" of the statute, and must not disregard a statute's text "'under the pretext of pursuing the spirit' of the law." *Sleiter v. American Family Mut. Ins. Co.*, 868 N.W.2d 21, 24 (Minn. 2015) (quoting Minn. Stat. § 645.16). Further, subsequent "judicial construction[s] of a statute become part of the statute as though written therein." *State Farm Mut. Auto. Ins. Co. v. Lennartson*, 872 N.W.2d 524, 529 (Minn. 2015).

### 2. Analysis

Here, the parties dispute whether Great West must defend and indemnify Selle from Decker's negligence suit in North Dakota state court, on grounds that Selle was a "permissive user" of Decker's trailer at the time of the accident, and, hence, an "insured" subject to the Policy's liability provision.

At first glance, the Policy appears to resolve this dispute. Under the plain language of the Policy's "moving property exclusion," Selle was not an "insured" because (a) Selle was "using" Decker's trailer while "moving property to" the trailer, and (b) Selle was not an "employee, partner, [or] member" of KW Trucking, nor was he "leasing" or "borrowing" Decker's truck/trailer (or any other covered auto) from KW Trucking or Decker. *See supra* at 3 (citing Policy Liability Coverage § II.A.1.b(4)). Ergo, it seems, Great West has no obligation to defend and indemnify Selle.

However, Decker asserts that Great West's "moving property exclusion" is "void and unenforceable" against public policy. (Def.'s Br. at 41.) This is so because, in Decker's view, Minnesota law requires auto insurers to provide liability coverage to *any* permissive user of

a motor vehicle, through so-called "omnibus" coverage.[13] Great West, by contrast, argues that Minnesota law contains no such requirement, and that its "moving property exclusion" is therefore enforceable.

Upon careful consideration, the Court finds that neither the No-Fault Act nor Minnesota case law preclude Great West from limiting its liability coverage to certain permissive users in the "moving property" context. Consequently, the Court will not strike down Great West's "moving property exclusion" as void against public policy, and will not require Great West to defend and indemnify Selle. The Court reaches this conclusion for four reasons.

*First*, on its face, the No-Fault Act does not contain an "omnibus" coverage requirement for permissive users. The section of the Act detailing the requirements for "residual liability coverage" states that the insurer "shall be liable to pay, on behalf of the insured, sums which the insured is legally obligated to pay as damages because of bodily injury and property damage arising out of the ownership, maintenance or use of any motor vehicle, *including a motor vehicle permissively operated by an insured as that term is defined in [the statute]*." Minn. Stat. § 65B.49, subd. 3(1) (emphasis added). An "insured" is a "named insured," or that named insured's spouse, minor-in-custody, or resident relative, so long as the person is not a named insured on a different insurance policy. *See id*. § 65B.43, subd. 5.

---

[13]     "Omnibus protection is the extension of liability coverage to a permissive user of a motor vehicle owned and insured in the name of another." *Agency Rent-a-Car, Inc. v. Am. Fam. Mut. Auto. Ins. Co.*, 519 N.W.2d 483, 485 n.2 (Minn. Ct. App. 1994) (citing *Milbank Mut. Ins. Co. v. United States Fidelity & Guar.*, 332 N.W.2d 160, 165 (Minn. 1983)). The parties do not appear to dispute that Selle was a "permissive user" of Decker's trailer at the time of the accident here.

As such, by its plain text, the No-Fault Act only specifically requires that an insurer provide omnibus coverage for a certain class of permissive users, *i.e.*, "insureds" as defined by the statute. *See McClain v. Begley*, 465 N.W.2d 680, 685 n.5 (Minn. 1991) (Simonett, J., concurring) ("Unlike [other states,] our state has no 'omnibus statute.'"); *Agency Rent-a-Car*, 519 N.W.2d at 487 ("Minnesota has no omnibus insurance statute."). Because Great West's "moving property exclusion" does not run afoul of this statutory requirement, the Court cannot void the exclusion on that ground. [14]

*Second*, the Minnesota Supreme Court has repeatedly stated that, because the No-Fault Act is more concerned with providing "first party coverage" to injured policyholders (*i.e*, no-fault or uninsured/underinsured motorist benefits) than "third party coverage" to third parties injured by an insured's negligence (*i.e.*, residual liability insurance), insurers have more leeway to limit coverage for "third party" claims than they do for "first party" claims. *See Lobeck v. State Farm Mut. Ins. Co.*, 582 N.W.2d 246, 249-51 (Minn. 1998); *accord Latterell*, 801 N.W.2d at 922; *Progressive Specialty Ins. Co. v. Widness ex rel. Widness*, 635 N.W.2d 516, 520-21 (Minn. 2001); *Toomey v. Krone*, 306 N.W.2d 549, 550 (Minn. 1981). Put differently, "[w]hile the No-Fault Act requires an automobile owner's policy to include third-

---

[14]     In a footnote in *McClain*, Justice Simonett cited an affidavit from the Minnesota Department of Commerce for the proposition that, "apparently," "the Minnesota Department of Commerce will not approve an auto insurance policy for sale in this state unless it contains a 'permissive user' provision which extends coverage under the policy to anyone using the car with the permission of the insured." *McClain*, 465 N.W.2d at 685 n.4. This passing reference to a decades-old affidavit, however, is not evidence that the No-Fault Act actually contains a broad omnibus liability requirement. If anything, it reinforces the Court's conclusion that the Act's plain text does not contain such a requirement.

party liability coverage, there is nothing in the No-Fault Act, either explicit or implicit, that prohibits insurance companies from including some restrictions on liability coverage in their contracts." *Lobeck*, 582 N.W.2d at 251.

For instance, in *Ill. Farmer's Ins. Co. v. Eull*, the Minnesota Court of Appeals found that a father's insurance company did not have to cover an accident arising out of his son's permissive use of his vehicle, because, at the time of the accident, the son was driving the vehicle for "business purposes" (*i.e.*, pizza delivering), and the father's insurance policy contained a "business-use exclusion" for residual liability coverage. *See* 594 N.W.2d 559, 560-61 (Minn. Ct. App. 1999). Although the injured party argued that this provision limiting liability coverage was void against public policy, the Court of Appeals found that a "business-use exclusion" for residual liability coverage did not violate the No-Fault Act's coverage mandate because the exclusion was "not so broad as to practically foreclose that coverage." *Id*. at 562; *but cf. Latterell*, 801 N.W.2d at 922-23 and n.2 (holding that an identical "business-use exclusion" *did* violate the No-Fault Act in the context of *first-party*, underinsured motorist benefits, and distinguishing *Eull* on grounds that it involved "third-party liability coverage").

Because Decker's claim is for "third party" liability coverage, and because the at-issue "moving property exclusion" is analogous to the business-use exclusion upheld in *Eull*, this case law further supports the conclusion that Great West's narrow liability exclusion is not void against public policy. [15]

---

[15] Admittedly, Decker's "third party" claim is somewhat unusual in that he, too, is an "insured" under the Policy he is seeking liability coverage under. *See Wilbur v. State Farm Mut. Auto. Ins. Co.*, 892 N.W.2d 521, 524 n.1 (Minn. 2017) ("A first-party claim is made by an injured party against his own insurer. In contrast, a third-party claim is made

*Third*, the Minnesota case law cited by Decker for the proposition that Minnesota public policy "implicitly mandates" complete and total omnibus liability coverage is inapposite. (*See* Def.'s Br. at 36.) Most notably, Decker relies on two decisions barring rental car companies from limiting liability coverage to only those permissive drivers who did not carry their own liability insurance. *See Hertz*, 573 N.W.2d at 688-90; *Mut. Serv. Cas. Ins. Co. v. West Bend Mut. Ins. Co.*, 599 N.W.2d 585, 587-88 (Minn. Ct. App. 1999). Enforcing such a contract, the Minnesota Supreme Court ruled, "would create a practical exemption to the broad statutory mandate that all automobile owners [including rental car companies] carry liability insurance, an exemption nowhere evident in the language of the statute." *Hertz*, 573 N.W.2d at 689. In *Mut. Serv. Cas. Ins.*, the Court of Appeals voided an analogous provision in a repair garage rental contract, and noted that the provision improperly "shift[ed] the burden of providing primary insurance from the automobile owner (the auto dealer) to the permissive user (the customer)." 599 N.W.2d at 588.[16]

These decisions provide some support for the idea that, even absent a strict statutory requirement, Minnesota public policy bars *sweeping* exclusions to residual liability coverage for permissive users. *See McClain*, 465 N.W.2d at 685 (Simonett, J., concurring) (noting, in analogous rental car case, that an "attempt[] to deny *all* omnibus coverage . . . was void")

---

by an individual other than the insured; for example, by an injured party against the insurer of the at-fault party."). However, because Decker is seeking coverage from *Selle* as an at-fault insured, rather than directly from Great West, his claim is still best classified as a "third party" residual liability claim.

[16]    The legislature later amended the No-Fault Act to allow rental companies to enter into these kinds of contracts with their renters. *See Econ. Premier Assur. Co. v. W. Nat. Mut. Ins. Co.*, 839 N.W.2d 749, 756-57 (Minn. Ct. App. 2013).

(emphasis added). However, absent more explicit guidance from the Minnesota judiciary, and in light of the (more recent) case law discussed above, the Court agrees with Great West that these decisions do not hold "that an insurer must provide residual liability coverage to everyone or in every possible circumstance." (Pl.'s Opp. Br. at 16.) Importantly, the Policy here did not "attempt to deny *all* omnibus coverage" to permissive users, *McClain*, 465 N.W.2d at 685 (Simonett, J., concurring), or entirely "shift the burden of providing primary insurance from the automobile owner [Decker/KW Trucking] to the permissive user [Selle]," *Mut. Serv. Cas. Ins.*, 599 N.W.2d at 588. Rather, it carved out a narrow exception to the general rule of omnibus coverage, in the specific context of moving property.

Consequently, *Hertz* and *Mut. Serv. Cas. Ins.* do not convince the Court that Great West's "moving property exclusion" is void against public policy.[17]

***Fourth***, the out-of-state case law cited by Decker is similarly unavailing. Decker is correct that a handful of other state courts have found an analogous "moving property exclusion" void against public policy. *See, e.g.*, *Mullenberg v. Kilgust Mech., Inc.*, 612 N.W.2d 327 (Wis. 2000); *Truck Ins. Exch. v. Home Ins. Co.*, 841 P.2d 354 (Colo. Ct. App. 1992); *Marathon Oil Co. v. Cont'l Cas. Co.*, 534 F. Supp. 1052 (E.D. Mich. 1982); *Mission Ins. Co. v. Aid Ins. Serv.*, 585 P.2d 240 (Ariz. 1980); *Bellafronte v. General Motors Corp.*, 376 A.2d 1294 (N.J. Ct. App. 1977); *but see, e.g.*, *Coburn v. Aetna Cas. & Sur. Co.*, 212 A.D.

---

[17] The other Minnesota case law cited by Decker does not change the Court's conclusion. *Widness*, 635 N.W.2d at 521-22, and *Saengkeo v. Minn. Auto. Assigned Claims*, 877 N.W.2d 568 (Minn. Ct. App. 2016), both involved different issues than those contemplated here. Neither decision suggests that a "moving property exclusion" is void against public policy.

2d 752 (N.Y. 2d Dep't 1995). However, it appears that, at the time these decisions were rendered, the states in which those courts sat had a more explicit omnibus insurance requirement than Minnesota's current No-Fault Act. *See, e.g.*, N.J. Stat. 39:6B-1 (stating that liability coverage must cover "loss resulting from liability imposed by law . . . [and] sustained by any person arising out of the ownership, maintenance, operation, or use of a motor vehicle [for the following limits]").

Moreover, to the extent this out-of-state law carries any persuasive value, this Court is hesitant to venture beyond existing Minnesota case law and the plain text of Minnesota statutes. Expansions of state law are best left for state courts and state legislatures. *See Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1092-93 (7th Cir. 1999) (noting that "a federal court sitting in diversity must proceed with caution in making pronouncements about state law," and "must be careful to avoid the temptation to impose upon a state what it, or other jurisdictions, might consider to be wise policy").

For these reasons, Great West's summary judgment motion as to residual liability coverage is granted.[18]

## III.    CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

---

[18]    The Court acknowledges Decker's two other arguments in favor of voiding Great West's "moving property exclusion," *i.e.*, his "§ 221.141 argument" and his "void under North Dakota law argument." (*See* Hr'g Tr. at 27 (stating that Decker has "three different potential bases for [the exclusion] to be void and unenforceable").) Upon careful consideration, the Court finds neither of these arguments availing.

1. Great West's Motion for Summary Judgment [Doc. No. 104] is **GRANTED**;

2. Decker's Motion for Summary Judgment [Doc. No. 111] is **DENIED**; and

3. Decker's Supplementary Counterclaim [Doc. No. 48] is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: January 7, 2019                s/Susan Richard Nelson
                                      SUSAN RICHARD NELSON
                                      United States District Judge